Good morning, your honors. Peter Dion Kidnam appearing on behalf of Plaintiff and Appellant Justin Griffin. I think it's important to note, first of all, the procedural posture of this case. We're not here after a trial that was conducted by the trial court as a finder of fact. We're here on a summary judgment motion, an appeal from a summary judgment. And the burden is on defendant, in this case the moving party, to disprove every possible theory of relief. Not just one theory of relief, but every possible theory of relief alleged in the complaint. And they just simply haven't done that in this case. And the court ignored in her decision some of the claims that we had made and basically found as matters of fact, contrary to the evidence that we had presented, which would have been sufficient to support a finding of liability in our favor. Well, let me ask you this, Mr. Is it Dion Kidnam? Dion Kidnam. And I apologize. I'd like to reserve three minutes. Okay. It seems to me a lot of this case distills down to an interpretation of Friedkin versus Apple, where the California Supreme Court made clear that an employer's level of control is determinative, quote unquote. And that case involved intensive bag searches. And you're here dealing with the badging process that happens coming in. Isn't the badging process here significantly less invasive and burdensome than when your employer searches you? Well, number one, we're not just dealing with the badging process when you're going in. We're dealing with the mandatory security process when you're leaving. So in this case, just as an Apple, the workers were confined to the secure premises, which were surrounded by fencing. And the only way they could get out just as the only way the Apple employees could get out of the Apple store was to go through this mandatory exit security process. They had to wait in line up to 20, 25 minutes to go through this mandatory exit security process. And in Apple, you'll recall there was evidence before the district court that if you didn't have a bag, you could just walk through. So but the Court of Appeal and the was mandatory. It was mandatory exit security process. If that was controlled by the employer because you couldn't leave, you were confined. But we're in diversity here, correct? Right. So we have to go with the California Supreme Court or California law as best we can ascertain it. And if we if we were to hold that Griffin was under SAC's control, once he entered the property, would that have the effect of requiring compensation whenever employees are on an employer's premises? You know, where would we draw the line? And if it seems to me, if we were to hold what you're asking us to do, it's an extension of California law. And if we agree with you that we should probably certify it to the California Supreme Court, because this would affect a lot of California cases. Well, number one, I think you have to get to the time periods that we're talking about. We're talking about the mandatory entrance and exit security time, which is just as an apple. We're saying that should be compensable. So that's one factor of a compensable time. The district court really didn't even address by which Apple says you're entitled to be compensated for mandatory exit security searches, security processes. You're clearly under their control because you're confined to their premises until you go through this mandatory process. So that's one factor. The other factor is the drive time, the controlled drive time. And then the third time frame is the buggy time, which under Marillion is clearly compensable. So we're not extending law in that regard. But no one's disputing that he's entitled to the buggy time is my understanding. Yeah, but the court found that we introduced evidence that he wasn't paid for it. Sachs introduced evidence that he was. So there's an issue of fact as to whether he was paid for that time or not, which precludes summary judgment. There was a trial issue of fact on that issue at a minimum. We had a declaration showing, if believed by the trier fact, that he was not paid for the buggy time, which under Marillion was clearly wrong. So we're not extending California laws to the buggy time. We're saying that district court got it wrong when she said as a matter of law, she found essentially, as a matter of fact, that he was paid for that when we had evidence that he wasn't. Now, so we have security time at the beginning and at the end of the shift. And under Apple, mandatory security time having to wait for that. You're under their control. We're not extending anything with respect to the exit security time. That's what Apple says. Now, the real issue is the drive time claim. And it's our contention that given the level of control that was exercised by Sachs over that drive time saying you had to use a specific road, specific rules, you couldn't stop. Well, is there was there more than one road? No, there was one road. So that's not Sachs's fault. There was only one road to get there. There was only one road from the security entrance to the parking lot that they had to follow. They were limited. But were there multiple roads to the parking lot? No, there was one. There was one road they had to follow. That's the only way they could get to the work site where they actually install the panels. Well, I mean, that's my I guess that's my problem with is is is Sachs. And if there's only one road to get to the parking lot, how can Sachs be charged with control over that? Because there's no other way they they they could have. It's like saying in Maryland, let's say that you had a situation where the employer said, OK, I have my big my farm with all the farm workers, but it was secured with a fence. And the and the employer decided to say, OK, I'm going to make one road to the actual field area. And you have to only travel on the one road. You can't stop. You can't do anything else. You can't run any errands. You have to follow this road. You have to go five miles an hour for an hour before you get to the work site. That was the employer's choice to have one road. That was the employer's choice to secure the entire premises. And I only have one road that wasn't the work. That was that. But it was on private property and the government said you had endangered species issues that I mean, the employer didn't make that up. They're told that you can't you know, you can't run over the endangered species or as far as that goes. You had a couple of them there. That's true. But those were also then adopted as a requirement to the employer. But I want to focus. We have three elements of time here. We have the security time. We have the drive. You're getting into your rebuttal time if you want to. If you have no other questions at this point, then I'll reserve. OK, thank you. We'll go to the appellee. Thank you. Good morning, Your Honors. My name is Daniel Shamus, and I represent SACS Electric in this action. The district court properly granted summary judgment to SACS. And we can go through each of these claims that he's brought up. We'll start with a buggy claim for me. Sure. There were there were two reasons why the buggy time claim was properly entered. Summary judgment was properly entered with regards to that. The first reason is is substantive, which is that the plaintiff did not introduce any evidence that he was not paid for a single ride on the buggy ride. Instead, they introduced two things. They introduced the policy, which was a generic policy that said employees shall be at their assigned workplace and ready for work at their designated starting time. And the second piece of evidence they introduced was two declarations from different people saying that I was told by somebody that we were supposed to be off the buggy by start time. That's all they introduced. Now, plaintiff himself, in deposition, testified to two important facts. One is he testified that he was paid for all time on the buggy. He said that in deposition. He also said that he was his colleagues or his co-workers at the parking lot at 8 a.m. at start time. So everyone agrees that people got paid from start time to end time, 8 a.m. to whatever the end time was. And the plaintiff testified in deposition that he only got on the buggy at start time. So all times on the buggy, he was paid. And that is from his deposition. So therefore, he cannot raise a with respect to buggy time. But the second reason that the buggy time claim was properly, summary judgment was properly granted, is a procedural reason, which is that it was never part of this case. It was not part of the original complaint. It was not part of the First Amendment complaint. And the only time that the plaintiff brought it up was in opposition to summary judgment. And at that late stage, the court said, wait a minute, where is that? And they only brought it up then. And the court was very clear that you were not allowed to bring up new claims that late in the process. In fact, there are many, many cases. You're saying you're framed by the pleadings. The summary judgment motion is framed by the Exactly. And he tried to bring it up later. And that was too late. But again, substantively, we have clear testimony on that. And procedurally, it's also barred as well. Now he's going to say, well, it was actually in the consolidated complaint. It was properly raised in the consolidated complaint. But the district court was clear that the consolidated complaint was only to join two related actions. The district court specifically said that you cannot raise new claims in the consolidated complaint. And if you wanted to, you'd have to make a motion to amend the complaint and meet the good cost standard under rule 16. So for those reasons, the buggy time claim is not properly, was properly, summary judgment was properly granted. Can you talk about free conforming? Yes, yes. And that case was completely different than the case here. Because in that case, as you said, Your Honor, it was an invasive security check. It was a search. They went through bags. They detained them. And you have to ask yourself, what was the purpose of that procedure? It was to search bags, find merchandise, benefit the employer. What was the purpose of the guard shack scan? It was simply ingress and egress. It is no different than scanning a card when you're entering a building to get into a warehouse or to get into an office building. Or even more similar, rolling down a window, pulling a ticket from a garage and driving in. None of that is reporting to work. None of that is control. And none of that is security. Would your analysis differ if due to lack of guards, it took employees two hours to get through the security gate? Well, to me, the waiting in line issue, there are two reasons why that is irrelevant. One is because if it's an issue of a throng of workers, I mean, sometimes you can imagine like 500 workers trying to access a door or a single gate at the same time. They'd wait in line and they would get through. They don't start getting paid from that time unless, and this is the second thing that I want to bring up, unless they were told, get to the gate at 7 a.m. or get to the gate at 6.30 a.m. If they are there waiting in line because they were told you have to get there at that time, then they have to start being paid because that was control. They were told to report at that time. In this case, the evidence is solely that Mr. Griffin was told to report to the parking lot at 8 a.m. And to do that. Let me ask you this, though. I know they had different choices. You could drive your own vehicle. You also had a bus that people could get on to go in. If hypothetically, the only way you could go on the property was to go on your bus, how would that change the analysis? Yeah, well, then we would be in the Meridian world and we totally agreed that would be compensable because that would be a required commute where you'd say you have to board the bus and we're going to take you to the parking lot. But to bring up another point about the shift to the drive issue, which is that the reason why Meridian is so much different in the Ready Lojack case is so much different, too. And I know your honor was actually on that case and I was actually the lawyer for Lojack. So I remember that case very, very well. The difference between that case and Meridian case in this case is that in that case, it was strictly the commute that was controlled. It was you have drive our vehicle to work. So the opportunities to run errands, to drop off kids at school, all of that to take different routes, that opportunity was taken away by the employer. And therefore, the courts in both cases said that it is controlled. This is completely different because in this case, we're not talking about travel to work where you have an opportunity to where there is no opportunity. Once you pass the gate, you can't stop at a 7-Eleven. You can't drop your kids off at school. It's complete. You're only on the premises. And that's why we cited the Anderson cases and the old cases about when employees used to make claims exactly like this, which is like, I'm on the property. I am control. I am required to be here and I can't do anything else. So therefore, pay me for while I'm on the property. And both California and the FLSA rejected that standard. And so when when Griffin says. Councilor, can I ask a question? Yes. That's the one part that is a little more control than I think some of the cases. Well, what's the purpose of the Pace car and why doesn't that exhibit control over the employees? Well, so sometimes so to keep speeds down, they would have a Pace car drive periodically to make sure the cars weren't zooming ahead. And so to me, that that is identical to a speed limit that basically says that or a rule like no running or some kind of control over the pace. You can control an employee while they're traveling at work, given certain escalators, certain things that make them go a little bit slower. Those are OK because, again, these are rules about ways to report to work and it's OK to control. And we call those in the brief path of travel rules, which are, again, things you can't the restricted areas. Employees aren't allowed to travel into any room they want to on the way to work. And employers are allowed to say, once you get to our property, you have to take this route to work. You have to go this fast. You can't speed. You can't slide down stair banisters. You can't speed across the parking lot in a vehicle. You can't. But once they get on the property, do they have to follow Pace car or do they they just have to follow the rules of the road? And if there is, there might be a Pace car on occasion. Exactly right. There weren't a Pace car for every vehicle. It was just Sachs had or First Solar. The property had Pace cars that periodically were on the road to control the speed. So vehicles went themselves. They followed the speed limits. They had to respect the endangered species habitat, like the kit fox zones. And so for all these reasons, your honors, we would say the district court properly answered summary judgment. The district court did not resolve any issues of fact other than the buggy time claim. But for the reasons I've already said, all of those those claims were clearly they could not raise a tribal issue of fact. Let me ask you hypothetically, and I realize I'm taking you over on this. You've been on time, but if and I'm saying this hypothetically because I have no idea what my colleagues think or we were to if if I were to accept your interpretation of free can be Apple, but I still thought that badging was significantly that was significantly burdensome that you should compensate. Should we certify that issue to the California Supreme Court before deciding it ourselves in the first instance? Well, I would definitely say that if we were going if you were going to say that once you swipe in to access an entry point at an employer's property, then you are controlled and you have to be paid for every all time after that. That would be an incredibly, as you as you've suggested before, that would be an incredibly significant ruling that would change workplace norms everywhere, because literally every employee would now have off the clock time because it takes everyone some amount of time to get to a thing on the employer's property clock in. And then by definition, you have off the clock time. And given the Supreme Court's California Supreme Court's ruling that the minimus is no longer or is not followed in California, then two minutes a day, four minutes a day, that is going to cost four years of back pay that that would be terribly crippling to the employers in the state. Okay, I just wanted to get that context. All right. So we'll go back to the appellant. And I'll give you three minutes for rebuttal. I'll extend it a little bit because we asked you some questions, too. Thank you. Thank you, Your Honor. Number one, I'd like to address the Marillion buggy ride claim. We alleged in the I'm adding his time up to three minutes. Okay. Thank you. I'm changing the clock there. Okay, go ahead. With respect to the Marillion claim, we specifically alleged in a consolidated complaint that he was not paid from the time he entered the security entrance until they left. That includes the buggy ride claim. They didn't know they never made a motion to strike those allegations from the complaint. The district court never said, I'm going to ignore those allegations. So Mr. Chavez's representations to the contrary simply aren't true. They did file a motion to strike claims on under the Bono claim theory, which was granted. But we're not before the court on the Bono claim, where our claim was that they couldn't leave during their lunch periods. So Mr. Chavez's You have an exit mandatory exit security process. Employees are confined to the employer's premises just as here until they go through this mandatory process. They have to wait in it. In our case, we had evidence that they had to wait in line up to 2025 minutes to get out of the premises. And and as we cited in Cervantes and Peltz, those where they had a mandatory exit security processes, they said, look, that's no different than Merlion. You can't run errands. You can't get out of the building. You can't get out of the premises without going through this security process. You're clearly under their control. You can't run errands. You're confined to the employer's premises. So at a minimum, that time should be compensable. We also had an issue with respect to the reporting time under the 5A of the wage order. We said that they had to report to the 5A of the wage order. Therefore, all travel time thereafter was compensable. And the court found, as a matter of fact, if that was not where they had a report, but that's a factual issue, not to be determined by the court, not to be determined as a matter of law, but by the trier of fact, where were they were required to report at first instance. And we had evidence that they were required to report at the security gate. Therefore, all travel time under rule 5A is compensable. And the trial court or the district court's decision to rule on that, as a matter of fact, is clearly erroneous. At a minimum, it's an issue of fact. Similarly, the issue of whether there's control during this exit security time is an issue of fact. And the issue of control during the drive time on this one way, on this one road that they couldn't stop, they couldn't do anything except drive on a designated route. The issue of control there is an issue of fact as well. So we have many issues of fact. And under security time, which we have in this case as compensable. So at a minimum, that should have been denied with respect to the exit security time. All right. Unless my colleagues have any questions, we've taken you over your time. So I'll ask you to take 30 seconds to wrap up. Or if you're wrapped up, you can wrap up. Thank you, Your Honor. The evidence shows that there are, at a minimum, triable issues of fact with respect to control. Under Frelkin v. Apple, mandatory exit security time that the employer requires to get out of, basically, let you out of the building, in the Apple case, or let you out of secure premises, in this case, is control time. That's when an employer controls an employee. If you can't get out of a building or out of an employer's premises without going through security, that's clearly control. At a minimum, it's an issue of fact. All right. Thank you for your argument. This matter will stand submitted.
judges: Callahan, Presnell, Bumatay